UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL HONIBALL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ALL WEB LEADS, INC., a Delaware corporation,<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Michael Honiball ("Plaintiff Honiball" or "Honiball") brings this Class Action Complaint and Demand for Jury Trial against Defendant All Web Leads, Inc. ("AWL" or "All Web Leads") to stop the Defendant from violating the Telephone Consumer Protection Act by making pre-recorded telemarketing calls to cellular telephone numbers without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Honiball, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Michael Honiball is a resident of Hoboken, New Jersey.

2. Defendant All Web Leads is a Delaware registered corporation with their principal office located at 7300 Ranch Road 2222, Building 2, Suite 100, Austin, Texas 78730. Defendant All Web Leads conducts business throughout this District and the U.S.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is appropriate because the Defendant conducts business in this District and because the wrongful conduct giving rise to this case was directed by the Defendant to, and received by the Plaintiff in, this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in

Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful robocalling technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in May 2021 alone, at a rate of 128.7 million per day. www.robocallindex.com (last visited June 16, 2021).

11. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.


12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Defendant All Web Leads is Customer Acquisition Marketing business focused on the insurance industry. AWL generates and sells leads to insurance agents, brokers, and carriers.[3]

15. Defendant calls consumers with a pre-recorded voice message without first obtaining the consumer's prior express written consent.

16. In the job posting for a Contact Center Representative, AWL specifically lists inbound/outbound calling as one of the responsibilities:[4]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/all-web-leads-inc-/about/
[4] https://boards.greenhouse.io/allwebleads/jobs/4377685002?gh_src=3b8162c02

**Responsibilities**

- <u>Engage in inbound/outbound calls (no sales), ask qualifying questions, encourage a talk with an agent</u>
- Engage in follow up calls, inquire about the experience, ensure needs were met
- Communicate with management on a regular basis – 2-way feedback & coaching opportunities
- Select a shift that you can commit to on a long term basis
- 4 days of virtual training from your home office. AWL Company issued laptop mailed after training completion

17. In their effort to generate leads for selling to their customers, Defendant AWL places pre-recorded outbound calls to large numbers of consumers. Many of these consumers have never given their consent to receiving calls from the Defendants and many are even listed on the DNC list to deter telemarketers, such as the Defendant, from calling them.

18. Many of AWL's former employees have posted complaints online about placing calls to annoyed consumers who did not want to receive those calls in the first place, including many consumers who had previously complained about receiving unwanted calls and had instructed to be put on the AWL's 'Stop Call' list. Some of these complaints are produced below:

### Good pay, easy job, but be prepared for "unhappy" consumers

Contact Center Representative (Former Employee) - Texas - February 27, 2021

This job paid fairly well for a call center position, but I wouldn't recommend for anyone who has emotions.. I thought I could take being yelled at all day, but there are A LOT of <u>angry consumers that don't want to be getting cold calls.</u> It's understandable that they would be mad, but I don't think I was prepared for just how ugly some people can be.

- ✓ **Pros**
  Good Pay

- ✗ **Cons**
  Very hard to hit goals, <u>a lot of angry consumers</u>   [5]

### High Call Volume, Repetitive Work

Contact Center Representative (Former Employee) - Austin, TX - May 10, 2021

<u>Pretty typical phone job. A lot of outbound calling.</u> You're titled as a CCR, but the position is much more similar to telemarketing. Be prepared for <u>high call volumes</u>, I'd be on to the <u>next call in about 4/5 seconds.</u> Easy WFH job if you don't mind sticking to a script and appeasing annoyed callers.

- ✓ **Pros**
  Work From Home, Equipment provided

- ✗ **Cons**
  Short breaks, Constant Calls   [6]

---

[5] https://www.indeed.com/cmp/All-Web-Leads,-Inc./reviews
[6] *Id.*

> **Modern Day Telemarketing**
>
> Contact Center Representative (home agent) (Current Employee) - Austin, TX - December 22, 2019
>
> Like any job there's pros and cons:
> Pros:
> Work from home
> Computer and headphones provided
> The work is easy
> Cons:
> Constantly being yelled at and hung up on (it can be abusive at times)
> Sometimes you have to lie to customers (it's in the script)
> The pay is not horrible but can use some improvement
> There is no emphasis on customer service since you pretty much have to hurry and get customers to an insurance rep before they hang up on you.
>
> - Basically your success and longevity at this job depends upon the type of person you are. [7]

19. Many consumers have posted complaints online about receiving unwanted calls from the Defendant without having given them their consent to call. Here are some of the complaints for example:

> 04/19/2021
>
> This company is violating the national do not call list. First they robo called me from a spoof number. Then they called me again from a spoof number, and lied about their business name. When I talked to a manager, they hung up and blocked my number. [8]

> 10/28/2020
>
> All Web Leads refuses to stop calling me. They think I'm someone named ***** ******. They've given out my personal information (phone number) to other companies as well. I've politely requested to be placed on a "do not call" list, but they hang up on me. I've made my request dozens (I wish I was kidding) times and I've been hung up on innumerable times. I'm in disbelief that this has happened and that this is allowed to continue. This has been an issue for 1 and 1/2 years. What kind of "business" hangs up on someone when they make a polite request? I'm furious. [9]

---

[7] *Id.*

[8] https://www.bbb.org/us/tx/austin/profile/internet-marketing-services/all-web-leads-inc-0825-90019295/complaints

[9] *Id.*

CLASS ACTION COMPLAINT
-7-

> 10/17/2018
> This business calls me and text messages me several times a day and I have advised numerous times to the representatives to place my number on the do not call list. They don't care they continue to call and text anyway.
>
> [10]

> **RAB**
> ★☆☆☆☆ (1 star)    10/16/2019
> <u>I have asked to be taken off their call list. I have been unsuccessful after several tries</u>. This suggests to me that their lead list may not be accurate due to a lack of updates. Consumers should beware of this as they purchase the product.
>
> [11]

20. Several consumers have also posted complaints online about receiving pre-recorded calls from 646-867-2790, the same number from which Plaintiff Honiball was called.[12] For example:

> Hi, this is Kelly I'm calling about your interest in receiving health insurance quotes. My team will follow up with a call later, but in the meantime, we may call us at 1-646-867-2790 to get connected to a licensed agent. Thank you for using insurance quotes dot. Com and have a great day.

> Hi, this is Stacey and I'm calling to see if you need any help understanding your health coverage options. We have adviser's ready to find gaps in your coverage to help you save money. We will call again you can reach us directly at 1-646-867-2790. Thank you for using insurance quotes and have a great day.

21. Defendant not only places unwanted solicitation calls to consumers without their consent, but also sells many such phone numbers to their customers, as

---

[10] *Id.*
[11] https://www.bbb.org/us/tx/austin/profile/internet-marketing-services/all-web-leads-inc-0825-90019295/customer-reviews
[12] https://directory.youmail.com/directory/phone/6468672790

leads, and makes them place further unwanted calls to hundreds if not thousands of such consumers.

22. In response to these calls, Plaintiff Honiball files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

**PLAINTIFF HONIBALL'S ALLEGATIONS**

23. On June 7, 2021, at 11:46 AM, Plaintiff Honiball received an unsolicited phone call to his cell phone from phone number 646-867-2790.

24. Plaintiff answered the call which started with a pre-recorded voice message soliciting auto insurance. Plaintiff stayed on the line and spoke with an agent who inquired about Plaintiff's car's make and model details.

25. When 646-867-2790 is called, a pre-recorded voice message greets the caller and prompts them to press "1" to speak with an agent regarding insurance. The voice message provides the email id "legal@AllWebLeads.com" for learning about their Do Not Call policy. This same email id can also be found on the 'Terms of Use' agreement on Defendant AWL's website:[13]

---

[13] http://www.allwebleads.com/terms

> If you have questions, comments, concerns or feedback regarding this Agreement or our Services, please contact us at: legal@allwebleads.com

26. On pressing "1", the call is transferred to a live insurance agent.

27. Plaintiff Honiball has never given his consent to All Web Leads to place pre-recorded calls to his cell phone number.

28. The unauthorized solicitation telephone call that Plaintiff received from the Defendant, as alleged herein, has harmed Plaintiff Honiball in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery).

29. Seeking redress for these injuries, Plaintiff Honiball, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

30. Plaintiff Honiball brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent on the Defendant's behalf) called on their cellular telephone number (2) using a pre-recorded voice message, and (3) for whom the Defendant claims

it obtained consent to call the person or the person's number in the same manner as Defendant claims it supposedly obtained consent to call Plaintiff or Plaintiff's number.

31. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Honiball anticipates the need to amend the Class definitions following appropriate discovery.

32. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class because he received calls as part of the same telemarketing campaign resulting in calls to other Class members.

33. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

Common questions for the Class include, but are not necessarily limited to the following:

(a) whether the Defendant placed pre-recorded voice message call to Plaintiff Honiball and members of the Pre-recorded No Consent Class;

(b) whether the calls were made without first obtaining prior express written consent of Plaintiff Honiball and members of the Pre-recorded No Consent Class;

(c) whether Defendant's conduct constitutes a violation of the TCPA; and

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

34. **Adequate Representation**: Plaintiff Honiball will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class actions. Plaintiff Honiball has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Honiball and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Honiball nor his counsel have any interest adverse to the Class.

35. **Appropriateness**: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to

ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Honiball. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Honiball and the Pre-recorded No Consent Class)**

36. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

37. Defendant All Web Leads transmitted unwanted solicitation telephone calls to Plaintiff Honiball and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

38. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Honiball and the other members of the Pre-recorded No Consent Class.

39. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Honiball and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation, as well as injunctive relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Honiball individually and on behalf of the Class, prays for the following relief:

    a. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Honiball as the representative of the Class; and appointing his attorneys as Class Counsel;

    b. An award of actual and/or statutory damages and costs;

    c. An order declaring that Defendant's actions, as set out above, violate the TCPA;

    d. An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

    e. Such further and other relief as the Court deems just and proper.

# JURY DEMAND

Plaintiff Honiball requests a jury trial.

DATED this 24th day of June, 2021.

**MICHAEL HONIBALL**, individually and on behalf of all others similarly situated,

By: /s/ *Stefan Coleman*

Stefan Coleman
Law Offices of Stefan Coleman
1072 Madison Ave, Unit 1
Lakewood, NJ 08701
Telephone: (877) 333-9427
Facsimile: (888) 498-8946
Email: law@stefancoleman.com

Avi R. Kaufman*
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com
*Attorneys for Plaintiff and the putative Class*

**Pro Hac Vice motion forthcoming*